# EXHIBIT A



**LDD / ALL**
**Transmittal Number: 23027861**
**Date Processed: 04/08/2021**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | NIC Service Request<br>First American Title Insurance Company - Claim Services<br>5 First American Way<br>Santa Ana, CA 92707-5913 |
| **Electronic copy provided to:** | Karen Ashway<br>Kristina Egusa<br>Craig Terrell |

| | |
|---|---|
| **Entity:** | First American Title Insurance Company<br>Entity ID Number  2190625 |
| **Entity Served:** | First American Title Insurance Company |
| **Title of Action:** | 3100 Woodward 2014, 2014 vs. First American Title Insurance Company |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Macomb County Circuit Court, MI |
| **Case/Reference No:** | 2021-1180-CB |
| **Jurisdiction Served:** | Michigan |
| **Date Served on CSC:** | 04/07/2021 |
| **Answer or Appearance Due:** | 28 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Certified Mail |
| Sender Information: | Lawrence M. Scott<br>586-726-1000 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com



# *Anthony G. Forlini*

## Macomb County Clerk
## Register of Deeds

Kathy Smith
Chief Deputy Clerk

TO: _____

FROM: Macomb County Clerk of the Court

**2021 - 1180 - CB**

RE: _____  16th Circuit Court Case Number

JUDGE: ___ KATHRYN A. VIVIANO

---

This is to inform you that the above mentioned case is deemed an e-filing case pursuant to Administrative Order No. 2019-4. It is MANDATORY that all further filings in this matter are to be filed electronically through the court's e-filing website at:

### http://mifile.courts.michigan.gov

Registration instructions, filing instructions, the administrative order and frequently asked questions can be found on the court's website at:

### http://circuitcourt.macombgov.org/CircuitCourt-eFilingResources

All parties must register with the court and opposing parties one e-mail address for service. Service will be provided electronically to the email address that you provide. All parties must also register an email address with the TruFiling e-filing system. Each individual is responsible for the accuracy of the registered email address.

For TrueFiling technical support, please call 1-855-959-8868, or send an email to:

### support@truefiling.com.

You are required to serve this notification on all parties when perfecting service on the Complaint. Also, if you have not previously provided your email address to our office when submitting documents for filing, it is now required that you furnish it in order for us to update our records.

If you need help in submitting your filing electronically, assistance is available in the Circuit Court I.T. Department on the 6th Floor. Computers, scanners and staff are available to assist you during normal business hours 8:00 a.m. to 12:00 p.m. and 1:30 p.m. to 4:30 p.m.

---

**Court Section**
40 North Main Street, 1st Floor
Mount Clemens, MI 48043
586-469-5351; Fax: 586-469-5364
macombgov.org/ClerkRoD
courtclerk@macombgov.org

**Court Section File Room**
40 North Main Street, 1st Floor
Mount Clemens, MI 48043
586-469-5199; Fax: 586-469-5365
macombgov.org/ClerkRoD
fileroom@macombgov.org          01.17.2020

| Approved, SCAO | Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|---|

| STATE OF MICHIGAN<br>16th   JUDICIAL DISTRICT<br>JUDICIAL CIRCUIT<br>COUNTY PROBATE | SUMMONS | CASE NO.<br>2021 – 1180 -CB CB |
|---|---|---|

Court address
40 N. Main Street, Mt. Clemens, MI 48043

Court telephone no.
586-469-5351

| Plaintiff's name(s), address(es), and telephone no(s).<br>3100 WOODWARD 2014, LLC., AMERICAN COMMUNITY DEVELOPERS, INC., and GERALD A. KRUEGER | v | Defendant's name(s), address(es), and telephone no(s).<br>FIRST AMERICAN TITLE INSURANCE COMPANY<br>c/o CSC-Lawyers Incorporating Service<br>601 Abbott Road<br>East Lansing, MI 48823 |
|---|---|---|

Plaintiff's attorney, bar no., address, and telephone no.
LAWRENCE M. SCOTT (P30228)
O'Reilly Rancilio P.C.
12900 Hall Road, Suite 350
Sterling Heights, MI 48313
(586) 726-1000

Instructions: Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

**Domestic Relations Case**

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. Attached is a completed case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

**Civil Case**

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☑ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☑ this court, ☐ _____ / _____ Court, where

it was given case number 2018-004459-CB _____ and assigned to Judge Kathryn Viviano

The action ☐ remains ☑ is no longer pending.

Summons section completed by court clerk.          **SUMMONS**

NOTICE TO THE DEFENDANT: In the name of the people of the State of Michigan you are notified:

1. You are being sued.
2. YOU HAVE 21 DAYS after receiving this summons and a copy of the complaint to file a written answer with the court and serve a copy on the other party or take other lawful action with the court (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date<br>MAR 3 0 AND | Expiration date*<br>JUN 2 9 2021 | Court clerk<br>ANTHONY G. FORLINI |
|---|---|---|

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01   (8/18)  SUMMONS                                                    MCR 1.109(D), MCR 2.102(B), MCR 2.104, MCR 2.105

| | SUMMONS |
|---|---|
| | Case No. 21- |

**PROOF OF SERVICE**

TO PROCESS SERVER: You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

**2021 – 1 1 8 0 -CB**

**CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE**

| ☐ **OFFICER CERTIFICATE** | OR | ☐ **AFFIDAVIT OF PROCESS SERVER** |
|---|---|---|
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that: (notarization not required) | | Being first duly sworn, I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that: (notarization required) |

☐ I served personally a copy of the summons and complaint.
☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint, together with _____
List all documents served with the summons and complaint

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

I declare under the penalties of perjury that this proof of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee $ | Miles traveled | Fee $ | | Signature |
|---|---|---|---|---|
| Incorrect address fee $ | Miles traveled | Fee $ | **TOTAL FEE** $ | Name (type or print) |
| | | | | Title |

Subscribed and sworn to before me on _____ , _____ County, Michigan.
Date

My commission expires: _____ Signature: _____
Date                                              Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

**ACKNOWLEDGMENT OF SERVICE**

I acknowledge that I have received service of the summons and complaint, together with _____
Attachments

_____ on _____
Day, date, time

_____ on behalf of _____
Signature

| Approved, SCAO | | Original – Court<br>1st copy – Defendant | | 2nd copy – Plaintiff<br>3rd copy – Return |
|---|---|---|---|---|

| STATE OF MICHIGAN | | | CASE NO. |
|---|---|---|---|
| 16th | JUDICIAL DISTRICT<br>JUDICIAL CIRCUIT<br>COUNTY PROBATE | SUMMONS | 2021 – 1180 –CB |

Court address: 40 N. Main Street, Mt. Clemens, MI 48043     Court telephone no.: 586-469-5351

| Plaintiff's name(s), address(es), and telephone no(s).<br>3100 WOODWARD 2014, LLC., AMERICAN COMMUNITY DEVELOPERS, INC., and GERALD A. KRUEGER | v | Defendant's name(s), address(es), and telephone no(s).<br>FIRST AMERICAN TITLE INSURANCE COMPANY<br>c/o CSC-Lawyers Incorporating Service<br>601 Abbott Road<br>East Lansing, MI 48823 |
|---|---|---|
| Plaintiff's attorney, bar no., address, and telephone no.<br>LAWRENCE M. SCOTT (P30228)<br>O'Reilly Rancilio P.C.<br>12900 Hall Road, Suite 350<br>Sterling Heights, MI 48313<br>(586) 726-1000 | | |

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

### Domestic Relations Case
☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. Attached is a completed case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

### Civil Case
☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☑ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☑ this court, ☐ _____ Court, where

it was given case number 2018-004459-CB and assigned to Judge Kathryn Viviano

The action ☐ remains ☑ is no longer pending.

Summons section completed by court clerk.    **SUMMONS**

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. YOU HAVE 21 DAYS after receiving this summons and a copy of the complaint to file a written answer with the court and serve a copy on the other party or take other lawful action with the court (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date<br>MAR 3 0 AND'D | Expiration date*<br>JUN 2 9 2021 | Court clerk<br>ANTHONY G. FORLINI |
|---|---|---|

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01 (8/18) SUMMONS     MCR 1.109(D), MCR 2.102(B), MCR 2.104, MCR 2.105

**SUMMONS**

Case No. 21-

**PROOF OF SERVICE**

**TO PROCESS SERVER:** You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

2021 - 1180 - CB

**CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE**

| ☐ OFFICER CERTIFICATE | OR | ☐ AFFIDAVIT OF PROCESS SERVER |
|---|---|---|
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that: (notarization not required) | | Being first duly sworn, I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that: (notarization required) |

☐ I served personally a copy of the summons and complaint.
☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint, together with _____
List all documents served with the summons and complaint

_____

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

I declare under the penalties of perjury that this proof of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee $ | Miles traveled | Fee $ | | Signature _____ |
|---|---|---|---|---|
| Incorrect address fee $ | Miles traveled | Fee $ | TOTAL FEE $ | Name (type or print) _____ |
| | | | | Title _____ |

Subscribed and sworn to before me on _____ _____ County, Michigan.
                                              Date

My commission expires: _____  Signature: _____
                             Date                              Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

**ACKNOWLEDGMENT OF SERVICE**

I acknowledge that I have received service of the summons and complaint, together with _____
                                                                                        Attachments

_____ on _____
                              Day, date, time

_____ on behalf of _____
Signature

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF MACOMB

3100 WOODWARD 2014, LLC, a Michigan
Limited liability company, **AMERICAN
COMMUNITY DEVELOPERS, INC.**, a
Michigan corporation and **GERALD A.
KRUEGER**, an individual

2021-1180-CB

Case No. 21-_____-CB

Hon.

KATHRYN A. VIVIANO

2021 MAR 30 PM 1:13 FILED

Plaintiffs,

v

**FIRST AMERICAN TITLE INSURANCE
COMPANY**, a foreign corporation,

Defendant.

| | |
|---|---|
| O'Reilly Rancilio PC<br>Lawrence M. Scott (P30228)<br>James J. Sarconi (P66101)<br>Attorneys for Plaintiff<br>12900 Hall Road, Suite 350<br>Sterling Heights, Michigan 48313<br>586-726-1000<br>lscott@orlaw.com<br>jsarconi@orlaw.com | **RECORDS PRESERVATION NOTICE**<br><br>**You, Defendants, are hereby notified to preserve during the pendency of this action all records and documents in all forms and formats (digital, electronic, film, magnetic, optical, print, etc.) that are relevant or may lead to relevant information, and to notify your employees, agents and contractors that they are required to take appropriate action to do the same.** |

COMPLAINT

A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the Complaint has been previously filed in the Circuit Court/Macomb County, which were given case numbers 2018-004459-CB and was assigned to Judge Kathryn Viviano. The action is no longer pending.

**VERFICATION OF BUSINESS COURT JURISDICTION**

Beginning September 1, 2013, a party "shall verify on the face of the party's initial pleading that the case meets the statutory requirement to be assigned" to the Macomb County Business Court. See MCR 2.112(O). The amount in controversy exceeds $25,000.00, includes a business or commercial dispute and all parties are business enterprises or engaged in trade or business. Thus, the case qualifies as business or commercial dispute as defined in MCL 600.8031(c).

_/s/ Lawrence M. Scott_
LAWRENCE M. SCOTT (P30228)

NOW COME Plaintiffs, 3100-WOODWARD-2014, LLC, AMERICAN COMMUNITY

DEVELOPERS, INC., and GERALD A. KRUEGER by their counsel, O'Reilly Rancilio P.C.,

and for their Complaint against the above referenced Defendants, states as follows:

### PARTIES AND JURISDICTION

1.      Plaintiff, 3100 Woodward 2014 L.L.C. ("3100"), is a limited liability company

organized under the laws of the State of Michigan.

2.      Plaintiff American Community Developers, Inc. ("ACD") is a Michigan

corporation, with a resident agent and office of Gerald A. Krueger, 20250 Harper Ave, Detroit

MI 48225. ACD is the managing member of 3100.

3.      Plaintiff Gerald A. Krueger ("Krueger") is an individual, and is the President of

ACD and a director of 3100.

4.      Defendant, First American Title Insurance Company ("Defendant" or "FATIC")

is a foreign title insurance company incorporated under the laws of Nebraska with its registered

office listed as 601 Abbott Road, East Lansing, MI 48823. Upon information and belief, FATIC

is licensed to conduct business in Michigan. FATIC's resident agent for the purposes of service

of process is CSC-Lawyers Incorporating Service.

5.      FATIC conducts business and maintains offices in Macomb County, Michigan.

6.      Jurisdiction is properly before this Court as the amount in controversy exceeds

$25,000.00 exclusive of interest, costs, and attorney fees.

7.      Venue is proper before this Court as the Defendants conduct business in Macomb

County, Michigan and the prior action was maintained in this venue.

2

## GENERAL ALLEGATIONS

8.     Plaintiffs incorporate by reference each allegation contained within this Complaint.

9.     On or around July 26, 2014, FATIC issued a commitment for an owner's policy of title insurance to Plaintiff after completing the examination of three separate chains of title to cover the following three parcels:

a.     A "Condominium Parcel" within Crystal Lofts Condominium, located at Woodward and Watson streets in Detroit, (approximately two blocks north of Little Caesar's Arena);

b.     An "Easement Parcel" that provided adjacent parking rights and trash easement rights; and

c.     An "Unimproved Parcel" located adjacent to east of Condo Parcel.

10.     The Easement Parcel consists of (1) a nonexclusive easement recorded in Liber 45720, page 296 of the Wayne County Records ("Trash Easement"), and (2) a nonexclusive easement recorded in Liber 46122, page 1049 of Wayne County Records ("Parking Easement").

11.     The Parking Easement provided 3100 the perpetual right of access to use 22 parking spaces whenever in the future a parking garage was constructed on land directly adjacent to the north of the Condo Parcel and Unimproved Parcel (the "Easement Burdened Property").

12.     Plaintiff 3100 acquired all right, title and interest in and to the Condo Parcel, Easement Parcel and Unimproved Parcel on October 28, 2014 and its interest in all three separately identified parcels were provided under a Covenant Deed that was recorded on January 27, 2015 as Instrument #2015032170, Wayne County Register of Deeds.

13.     On January 27, 2015, FATIC issued an Owner's Policy of Title Insurance, Policy Number 554298, naming 3100 as the insured. **Exhibit A.**

3

14.    The Owner's Policy stated that FATIC would insure against loss or damage sustained or incurred by the Insured by reasons including but not limited to the following:

a.    Title being vested other than as stated in Schedule A of the policy (i.e., 3100);

b.    Any defect in or lien or encumbrance on the Title;

c.    Unmarketable Title;

d.    No right of access to and from the land;

e.    The violation or enforcement of any law, ordinance, permit, or governmental regulation related to land uses.

15.    The Policy covered the Easement Parcel.

16.    All General Exceptions were deleted from the Policy.

17.    The Policy further states that FATIC will also pay the costs, attorneys' fees, and expenses incurred in defense of any matter insured against by the Policy.

***FATIC LEARNS OF A DISPUTE AGAINST THE EASEMENT PARCEL***

18.    On or around June 5, 2015, Plaintiff received correspondence from an employee of Title Source, a title insurance agency researching the title of the Easement Burdened Property. The Title Source representative maintained that the Parking Easement and Trash Easement were not enforceable.

19.    On July 6, 2015, an underwriter at FATIC was informed of claims by Title Source about the unenforceability of the Parking Easement and Trash Easement.

20.    On July 19, 2015, a representative of FATIC confirmed to Plaintiff that FATIC knew Title Source was closing on the sale of the Easement Burdened Property and that 3100 would be submitting its title policy claim against FATIC and undertaking litigation against Woodward and Erskine, LLC ("W&E") as soon as the Title Source closing was complete.

4

21. On or about July 20, 2015, the Easement Burdened Property was purchased by W&E.

22. FATIC did not inform Plaintiff that it was insuring W&E's title to the Easement Burdened Property **against** the interests of 3100 in the Easement Parcel that FATIC had previously insured for the benefit of the Plaintiff.

23. On July 23, 2015, Plaintiff 3100 tendered a claim to FATIC.

### FATIC CHOOSES TO LITIGATE TO ESTABLISH VALIDITY OF EASEMENTS

24. On August 7, 2015 Beth V. Schreiber of FATIC, emails 3100's general counsel that "it has retained attorney LeRoy Asher of Miller Canfield to establish the validity of the easements as they are being challenged by the neighboring parcel owner."

25. Subsequently, a Complaint was filed in the Wayne County Circuit Court captioned *3100 Woodward 2014 LLC v Woodward and Erskine LLC and Sachse Construction and Development Company, LLC,* Wayne County Circuit Court Case No. 15-010490-CB (the "First Action").

26. FATIC directed the course of the First Action, providing instruction to LeRoy Asher and directing that an Amended Complaint be filed and approving the motion practice that proceeded in the First Action.

27. Ultimately, the Court in the First Action dismissed the lawsuit FATIC wanted to litigate to establish the title to the Easement Parcel on August 30, 2016.

### W&E SUES FOR PERPETUATING LITIGATION

28. On August 23, 2018 W&E filed a lawsuit in the Wayne County Circuit Court captioned *Woodward & Erskine, et al v 3100 Woodward 2014, LLC, American Community Developers, Inc. and Gerald A. Krueger,* Wayne County Circuit Court Case No. 18-010573-CB (the "Second Action").

5

29.     Counsel for W&E in the Second Action stated that 3100, ACD and Krueger committed tortious interference (harming W&E) by maliciously filing and/or maliciously prosecuting a sham lawsuit (referring to First Action).

30.     The First Action was prosecuted and perpetuated at the direction of FATIC which chose litigation pursuant to paragraph 5(b) of the Conditions contained in the Policy.

31.     Plaintiffs filed a claim with FATIC for coverage and defense of the claims filed by W&E in the Second Action.

32.     Plaintiffs' claim was assigned claim no MI-1809205197.

33.     FATIC retained counsel to defend 3100 only in the Second Action and did so pursuant to a reservation of rights [letter from John V. Laird dated October 1, 2018].

34.     FATIC would not agree to pay for the defense of ACD or Krueger.

35.     Notwithstanding the fact that the Second Action was filed based upon the actions of FATIC, ACD and Krueger retained counsel to defend the Second Action.

36.     ACD and Krueger incurred substantial legal fees in defense of the Second Action.

37.     Counsel for ACD and Krueger investigated, researched and prepared the motion for summary disposition that resulted in the dismissal of the first two (of three) of the claims in the Second Action.

38.     Thereafter, counsel for ACD and Krueger investigated, researched and prepared a motion for summary disposition of the remaining claim in the Second Action.

39.     In the period between the filing of the summary disposition motion and the court scheduling a hearing on the motion, case evaluation was conducted.

40.     On October 16, 2020 counsel for ACD and Krueger sent correspondence to John V. Laird of FATIC demanding that FATIC fund ACD and Krueger's share of the case evaluation

6

award and reimbursing ACD and Krueger for its attorney fees incurred in the joint defense of 3100, ACD and Krueger.

41.    The case evaluation panel in the Second Action awarded W&E $25,000 against 3100, $25,000 against ACD and $25,000 against Krueger.

42.    On October 19, 2020 John V. Laird responded to ACD and Krueger's counsel refusing the request.

43.    FATIC instructed the counsel it retained to defend 3100 to accept the case evaluation award. Thereafter, FATIC funded 3100's portion ($25,000) of the case evaluation award.

44.    ACD and Krueger accepted the case evaluation award and funded the remaining $50,000 to resolve the Second Action that was premised upon litigation (First Action) perpetuated by FATIC.

45.    It is undisputed that ACD and Krueger were sued as a result of the filing and continuation of the First Action which was directed by FATIC.

46.    3100 is owned by ACD and under the control of Krueger.

47.    ACD and Krueger were/are intended third party beneficiaries of the Policy between 3100 and FATIC.

48.    But for FATIC's issuance of the Policy declaring that the Easement Parcel was an insurable and enforceable interest; insuring the exact opposite position for W&E; insisting on enforcing the validity of the Easement Parcel via litigation; and refusal to simply pay the value of the insured interest, ACD and Krueger would not have incurred legal fees and the costs of the case evaluation award.

49.    Notwithstanding the above, ACD and Krueger were entitled to coverage and to have their defense of the Second Action covered by FATIC.

7

50. FATIC has refused in bad faith to pay Plaintiffs ACD and Krueger for the damages they have incurred as a direct and proximate result of the defense costs they incurred that were reasonably foreseeable from the actions of FATIC.

## COUNT I – BREACH OF INSURANCE CONTRACT

51. Plaintiffs incorporate by reference each allegation contained within this Complaint.

52. FATIC's actions constitute a breach of Plaintiff's title insurance contract with FATIC.

53. Plaintiffs were entitled to have the entirety of the defense costs and settlement costs (case evaluation award) covered and/or otherwise reimbursed by FATIC as a covered claim.

54. FATIC's interpretation of the Policy and actions it claims were within its rights under the Policy were the very cause of the damages suffered by the Plaintiffs.

55. Plaintiffs have suffered damages as a direct and proximate result of FATIC's breaches of the Policy contract.

## COUNT II – COMMON LAW INDEMNIFICATION

56. Plaintiffs incorporate by reference each allegation contained within this Complaint.

57. FATIC's actions were the proximate cause of the damages suffered by Plaintiffs.

58. As more fully articulated above, FATIC's negligence in both insuring the validity on one hand and invalidity on the other of the Easement Parcel and insistence on pursuing litigation to establish the "validity" of the Easement Parcel was the cause of the damages suffered by Plaintiffs.

59.   ACD and Krueger were/are free of any active negligence and are not otherwise prohibited from seeking common law contribution.

60.   The underlying suit (Second Action) giving rise to this claim was premised upon the decision to initiate and perpetuate the First Action which was the decision of FATIC.

61.   Plaintiffs ACD and Krueger suffered damages in the form of defense costs and the case evaluation award that it paid to W&E.

62.   Equity demands that FATIC indemnify and reimburse ACD and Krueger for the losses it suffered through no active fault of its own and as a direct result of the actions of FATIC.

## COUNT III – IMPLIED CONTRACT TO INDEMNIFY

63.   Plaintiffs incorporate by reference each allegation contained within this Complaint.

64.   An implied contract to indemnify arises where there is a special relationship between the parties or a course of conduct whereby one party undertakes to perform a certain service and impliedly assures indemnification.

65.   A special relationship existed between Plaintiffs on one hand and Defendant FATIC on the other.

66.   A course of conduct existed between the parties whereby FATIC directed that the First Action be filed and maintained and during which FATIC directed the litigation.

67.   FATIC represented to Plaintiffs that the Easement Parcel was a legal and enforceable interest in real estate.

68.   FATIC having represented that the Trash Easement and Parking Easement were valid and enforceable burdens against the Easement Burdened Property; FATIC impliedly agreed to indemnify Plaintiffs if it is later determined that FATIC was negligent in its representation.

9

69.     As stated above, FATIC represented (insured) to both the burdened and benefited property owner that the easements were unenforceable and enforceable respectively.

70.     Under these circumstances it is unreasonable for FATIC to take the position that its actions were not negligent.

71.     Under these circumstances it is unreasonable for FATIC to take the position that it did not impliedly agree to indemnify Plaintiffs when it chose to engage in litigation as opposed to paying the value of the Easement Parcel or purchasing a replacement for Plaintiffs.

72.     It was foreseeable that where FATIC represented and insured both the validity and invalidity of the easements and insisted on pursuing litigation, that W&E would file the Second Action in response to the actions propounded by FATIC.

73.     Plaintiffs damages suffered were not the result of any active negligence on the part of Plaintiffs.

74.     Plaintiffs were not responsible for the underwriting and/or conclusions of FATIC giving rise to the issuance of the Policy.

75.     Plaintiffs were not responsible for the underwriting and/or conclusions of FATIC when it issued a contradictory policy to W&E with respect to the same subject matter.

76.     Plaintiffs are entitled to a judgment in their favor and against Defendant FATIC for the damages they suffered that FATIC impliedly agreed to indemnify Plaintiffs from.

77.     As a direct and proximate result of Defendant's actions, Plaintiffs have been damaged.

WHEREFORE, Plaintiffs request entry of judgment against Defendant awarding any of the following remedies:

> (a) All compensatory, actual, incidental, consequential, exemplary, special and other damages to which Plaintiffs are entitled;

10

(b) Declaring that Defendant is obligated to indemnify Plaintiffs relative to the attorney fees and costs Plaintiffs suffered as direct and proximate result of the litigation prosecuted by Defendant;

(c) Declaring that Plaintiffs ACD and Krueger were intended third-party beneficiaries of the Policy;

(d) Declaring that the Second Action was a covered claim under the Policy;

(e) Granting equitable relief in the form of an award of common law contribution in favor of Plaintiffs and against Defendant for the amount of attorneys fees costs and other damages suffered by Plaintiffs.

(f) Attorneys fees and costs; and

(g) Any other relief the Court deems appropriate under the circumstances.

Respectfully submitted,

O'Reilly Rancilio, P.C.

Dated: March 29, 2021

By: */s/ James J. Sarconi*
Lawrence M. Scott (P30228)
James J. Sarconi (P66101)
Counsel for Plaintiffs
12900 Hall Road, Suite 350
Sterling Heights, Michigan 48313
(586) 726-1000
lscott@orlaw.com
jsarconi@orlaw.com

# EXHIBIT A



Form No. 1402.06
ALTA Owner's Policy (6-7-06)
1100302P050600



Policy Page 1
Policy Number: 654288

# OWNER'S POLICY OF TITLE INSURANCE

## *ISSUED BY: First American Title Insurance Company*

Any notice of claim or and any other notice or statement in writing required to be given to the Company under this policy must be given to the Company at the address shown in Section 18 of the Conditions.

### COVERED RISKS

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS FIRST AMERICAN TITLE INSURANCE COMPANY, a Nebraska corporation (the "Company") insures, as of Date of Policy and, to the extent stated in Covered Risks 9 and 10, after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the insured by reason of:

1. Title being vested other than as stated in Schedule A.
2. Any defect in or lien or encumbrance on the Title. This Covered Risk includes, but is not limited to insurance against loss from
   (a) A defect in the Title caused by
   - (i) forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;
   - (ii) failure of any person or Entity to have authorized a transfer or conveyance;
   - (iii) a document affecting Title not properly created, executed, "witnessed," sealed, acknowledged, notarized, or delivered;
   - (iv) failure to perform those acts necessary to create a document by electronic means authorized by law;
   - (v) a document executed under a falsified, expired, or otherwise invalid power of attorney;
   - (vi) a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or
   - (vii) a defective judicial or administrative proceeding.
   (b) The lien of real estate taxes or assessments imposed on the Title by a governmental authority due or payable, but unpaid.
   (c) Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land. The term "encroachment" includes encroachments of existing improvements located onto the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land.
3. Unmarketable Title.
4. No right of access to and from the Land.
5. The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
   (a) the occupancy, use, or enjoyment of the Land;
   (b) the character, dimensions, or location of any improvement erected on the Land;
   (c) the subdivision of land; or
   (d) environmental protection
   if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention

to enforce, but only to the extent of the violation or enforcement referred to in that notice.
6. An enforcement action based on the exercise of a governmental police power not covered by Covered Risk 5 if a notice of the enforcement, action, describing any part of the Land, is recorded in the Public Records, but only to the extent of the enforcement referred to in that notice.
7. The exercise of the rights of eminent domain if a notice of the exercise, describing any part of the Land, is recorded in the Public Records.
8. Any taking by a governmental body that has occurred and is binding on the rights of a purchaser for value without Knowledge.
9. Title being vested other than as stated in Schedule A or being defective
   (a) as a result of the avoidance in whole or in part, or from a court order providing an alternative remedy, of a transfer of all or any part of the title to or any interest in the Land occurring prior to the transaction vesting Title as shown in Schedule A because that prior transfer constituted a fraudulent or preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws; or
   (b) because the instrument of transfer vesting Title as shown in Schedule A constitutes a preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws by reason of the failure of its recording in the Public Records
   - (i) to be timely, or
   - (ii) to impart notice of its existence to a purchaser for value or to a judgment or lien creditor.
10. Any defect in or lien or encumbrance on the Title or other matter included in Covered Risks 1 through 9 that has been created or attached or has been filed or recorded in the Public Records subsequent to Date of Policy and prior to the recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The Company will also pay the costs, attorneys' fees, and expenses incurred in defense of any matter insured against by this policy, but only to the extent provided in the Conditions.

First American Title Insurance Company

*[signature]*
Dennis J. Gilmore
President

*[signature]*
Jeffrey S. Robinson
Secretary

Issuing Agent:
First American Title Insurance Company
100 Bloomfield Hills Parkway, Suite 195, Bloomfield Hills, Michigan 48304
Phone: (248)540-4102  Fax: (866)550-1079

**EXCLUSIONS FROM COVERAGE**

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

    (i) the occupancy, use, or enjoyment of the Land;
    (ii) the character, dimensions, or location of any improvement erected on the Land;
    (iii) the subdivision of land; or
    (iv) environmental protection;

or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

    (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3. Defects, liens, encumbrances, adverse claims, or other matters
    (a) created, suffered, assumed, or agreed to by the Insured Claimant;
    (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    (c) resulting in no loss or damage to the Insured Claimant;
    (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risks 9 and 10); or
    (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.

4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
    (a) a fraudulent conveyance or fraudulent transfer; or
    (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.

5. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

**CONDITIONS**

**1. DEFINITION OF TERMS**

The following terms when used in this policy mean:
    (a) "Amount of Insurance": The amount stated in Schedule A, as may be increased or decreased by endorsement to this policy, increased by Section 8(b), or decreased by Sections 11 and 12 of these Conditions.
    (b) "Date of Policy": The date designated as "Date of Policy" in Schedule A.
    (c) "Entity": A corporation, partnership, trust, limited liability company, or other similar legal entity.
    (d) "Insured": The Insured named in Schedule A.
        (i) The term "Insured" also includes
            (A) successors to the Title of the Insured by operation of law as distinguished from purchase, including heirs, devisees, survivors, personal representatives, or next of kin;
            (B) successors to an Insured by dissolution, merger, consolidation, distribution, or reorganization;
            (C) successors to an Insured by its conversion to another kind of Entity;
            (D) a grantee of an Insured under a deed delivered without payment of actual valuable consideration conveying the Title
              (1) if the stock, shares, memberships, or other equity interests of the grantee are wholly-owned by the named Insured,
              (2) if the grantee wholly owns the named Insured,
              (3) if the grantee is wholly-owned by an affiliated Entity of the named Insured, provided the affiliated Entity and the named Insured are both wholly-owned by the same person or Entity, or
              (4) if the grantee is a trustee or beneficiary of a trust created by a written instrument established by the Insured named in Schedule A for estate planning purposes.

            (ii) With regard to (A), (B), (C), and (D) reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor Insured.

    (e) "Insured Claimant": An Insured claiming loss or damage.
    (f) "Knowledge" or "Known": Actual knowledge, not constructive knowledge or notice that may be imputed to an Insured by reason of the Public Records or any other records that impart constructive notice of matters affecting the Title.
    (g) "Land": The land described in Schedule A, and affixed improvements that by law constitute real property. The term "Land" does not include any property beyond the lines of the area described in Schedule A, nor any right, title, interest, estate, or easement in abutting streets, roads, avenues, alleys, lanes, ways, or waterways, but this does not modify or limit the extent that a right of access to and from the Land is insured by this policy.
    (h) "Mortgage": Mortgage, deed of trust, trust deed, or other security instrument, including one evidenced by electronic means authorized by law.
    (i) "Public Records": Records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge. With respect to Covered Risk 5(d), "Public Records" shall also include environmental protection liens filed in the records of the clerk of the United States District Court for the district where the Land is located.
    (j) "Title": The estate or interest described in Schedule A.
    (k) "Unmarketable Title": Title affected by an alleged or apparent matter that would permit a prospective purchaser or lessee of the Title or lender on the Title to be released from the obligation to purchase, lease, or lend if there is a contractual condition requiring the delivery of marketable title.

**2. CONTINUATION OF INSURANCE**

The coverage of this policy shall continue in force as of Date of Policy in favor of an Insured, but only so long as the Insured retains an estate or interest in the Land, or holds an obligation secured by a purchase money Mortgage given by a purchaser from the Insured, or only so long as the Insured shall have liability by reason of warranties in any transfer or conveyance of the Title. This policy shall not continue in force in favor of any purchaser from the Insured of either (i) an estate or interest in the Land, or (ii) an obligation secured by a purchase money Mortgage given to the Insured.

**3. NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT**

The Insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 5(a) of these Conditions, (ii) in case Knowledge shall come to an Insured hereunder of any claim of title or interest that is adverse to the Title, as Insured, and that might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if the Title, as Insured, is rejected as Unmarketable Title. If the Company is prejudiced by the failure of the Insured Claimant to provide prompt notice, the Company's liability to the Insured Claimant under the policy shall be reduced to the extent of the prejudice.

**4. PROOF OF LOSS**

In the event the Company is unable to determine the amount of loss or damage, the Company may, at its option, require as a condition of payment that the Insured Claimant furnish a signed proof of loss. The proof of loss must describe the defect, lien, encumbrance, or other matter insured against by this policy that constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage.

**5. DEFENSE AND PROSECUTION OF ACTIONS**

    (a) Upon written request by the Insured, and subject to the options contained in Section 7 of these Conditions, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured. This obligation is limited to only those stated causes of action alleging matters insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the Insured to object for reasonable cause) to represent the Insured as to those stated causes of action. It shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs, or expenses incurred by the Insured in the defense of those causes of action that allege matters not insured against by this policy.
    (b) The Company shall have the right, in addition to the options contained in

Policy Page 2

Section 7 of these Conditions, at its own cost, to institute and prosecute any action or proceeding or to do any other act that in its opinion may be necessary or desirable to establish the Title, as insured, or to prevent or reduce loss or damage to the Insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable to the Insured. The exercise of these rights shall not be an admission of liability or waiver of any provision of this policy. If the Company exercises its rights under this subsection, it must do so diligently.

(c) Whenever the Company brings an action or asserts a defense as required or permitted by this policy, the Company may pursue the litigation to a final determination by a court of competent jurisdiction, and it expressly reserves the right, in its sole discretion, to appeal any adverse judgment or order.

## 6. DUTY OF INSURED CLAIMANT TO COOPERATE

(a) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding and any appeals, the Insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, including the right to use, at its option, the name of the Insured for this purpose. Whenever requested by the Company, the Insured, at the Company's expense, shall give the Company all reasonable aid (i) in securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act that in the opinion of the Company may be necessary or desirable to establish the Title or any other matter as insured. If the Company is prejudiced by the failure of the Insured to furnish the required cooperation, the Company's obligations to the Insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

(b) The Company may reasonably require the Insured Claimant to submit to examination under oath by any authorized representative of the Company and to produce for examination, inspection, and copying, at such reasonable times and places as may be designated by the authorized representative of the Company, all records, in whatever medium maintained, including books, ledgers, checks, memoranda, correspondence, reports, e-mails, disks, tapes, and videos whether bearing a date before or after Date of Policy, that reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the Insured Claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect, and copy all of these records in the custody or control of a third party that reasonably pertain to the loss or damage. All information designated as confidential by the Insured Claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the Insured Claimant to submit for examination under oath, produce any reasonably requested information, or grant permission to secure reasonably necessary information from third parties as required in this subsection, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

## 7. OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY

In case of a claim under this policy, the Company shall have the following additional options:

(a) To Pay or Tender Payment of the Amount of Insurance. To pay or tender payment of the Amount of Insurance under this policy together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment or tender of payment and that the Company is obligated to pay. Upon the exercise by the Company of this option, all liability and obligations of the Company to the Insured under this policy, other than to make the payment required in this subsection, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

(b) To Pay or Otherwise Settle With Parties Other Than the Insured or With the Insured Claimant.

(i) To pay or otherwise settle with other parties for or in the name of an Insured Claimant any claim insured against under this policy, in addition, the Company will pay any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay; or

(ii) To pay or otherwise settle with the Insured Claimant the loss or

damage provided for under this policy, together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay. Upon the exercise by the Company of either of the options provided for in subsections (b)(i) or (ii), the Company's obligations to the Insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

## 8. DETERMINATION AND EXTENT OF LIABILITY

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy.

(a) The extent of liability of the Company for loss or damage under this policy shall not exceed the lesser of

(i) the Amount of Insurance; or

(ii) the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy.

(b) If the Company pursues its rights under Section 5 of these Conditions and is unsuccessful in establishing the Title, as insured,

(i) the Amount of Insurance shall be increased by 10%, and

(ii) the Insured Claimant shall have the right to have the loss or damage determined either as of the date the claim was made by the Insured Claimant or as of the date it is settled and paid.

(c) In addition to the extent of liability under (a) and (b), the Company will also pay those costs, attorneys' fees, and expenses incurred in accordance with Sections 5 and 7 of these Conditions.

## 9. LIMITATION OF LIABILITY

(a) If the Company establishes the Title, or removes the alleged defect, lien, or encumbrance, or cures the lack of a right of access to or from the Land, or cures the claim of Unmarketable Title, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused to the Insured.

(b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals, adverse to the Title, as insured.

(c) The Company shall not be liable for loss or damage to the Insured for liability voluntarily assumed by the Insured in settling any claim or suit without the prior written consent of the Company.

## 10. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY

All payments under this policy, except payments made for costs, attorneys' fees, and expenses, shall reduce the Amount of Insurance by the amount of the payment.

## 11. LIABILITY NONCUMULATIVE

The Amount of Insurance shall be reduced by any amount the Company pays under any policy insuring a Mortgage to which exception is taken in Schedule B or to which the Insured has agreed, assumed, or taken subject, or which is executed by an Insured after Date of Policy and which is a charge or lien on the Title, and the amount so paid shall be deemed a payment to the Insured under this policy.

## 12. PAYMENT OF LOSS

When liability and the extent of loss or damage have been definitely fixed in accordance with these Conditions, the payment shall be made within 30 days.

## 13. RIGHTS OF RECOVERY UPON PAYMENT OR SETTLEMENT

(a) Whenever the Company shall have settled and paid a claim under this policy, it shall be subrogated and entitled to the rights of the Insured Claimant in the Title and all other rights and remedies in respect to the claim that the Insured Claimant has against any person or property, to the extent of the amount of any loss, costs, attorneys' fees, and expenses paid by the Company. If requested by the Company, the Insured Claimant shall execute documents to evidence the transfer to the Company of these rights and remedies. The Insured Claimant shall permit the Company to sue, compromise, or settle in the name of the Insured Claimant and to use the name of the Insured Claimant in any transaction or litigation involving these

Policy Page 3

rights end remedies. If a payment on account of a claim does not fully cover the loss of the insured Claimant, the Company shall defer the exercise of its right to recover until after the Insured Claimant shall have recovered its loss.

(b) The Company's right of subrogation includes the rights of the insured to indemnities, guaranties, other policies of insurance, or bonds, notwithstanding any terms or conditions contained in those instruments that address subrogation rights.

## 14. ARBITRATION

Either the Company or the Insured may demand that the claim or controversy shall be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("Rules"). Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other persons. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Insured arising out of or relating to this policy, any service in connection with its issuance or the breach of a policy provision, or to any other controversy or claim arising out of the transaction giving rise to this policy. All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the Company or the Insured. All arbitrable matters when the Amount of Insurance is in excess of $2,000,000 shall be arbitrated only when agreed to by both the Company and the Insured. Arbitration pursuant to this policy and under the Rules shall be binding upon the parties. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court of competent jurisdiction.

## 15. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT

(a) This policy together with all endorsements, if any, attached to it by the Company is the entire policy and contract between the Insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage that arises out of the status of the Title or by any action asserting such claim shall be restricted to this policy.

(c) Any amendment of or endorsement to this policy must be in writing and authenticated by an authorized person, or expressly incorporated by Schedule A of this policy.

(d) Each endorsement to this policy issued at any time is made a part of this policy and is subject to all of its terms and provisions. Except as the endorsement expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsement, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance.

## 16. SEVERABILITY

In the event any provision of this policy, in whole or in part, is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision or such part held to be invalid, but all other provisions shall remain in full force and effect.

## 17. CHOICE OF LAW; FORUM

(a) Choice of Law: The Insured acknowledges the Company has underwritten the risks covered by this policy and determined the premium charged therefor in reliance upon the law affecting interests in real property and applicable to the interpretation, rights, remedies, or enforcement of policies of title insurance of the jurisdiction where the Land is located. Therefore, the court or an arbitrator shall apply the law of the jurisdiction where the Land is located to determine the validity of claims against the Title that are adverse to the Insured and to interpret and enforce the terms of this policy. In neither case shall the court or arbitrator apply its conflicts of law principles to determine the applicable law.

(b) Choice of Forum: Any litigation or other proceeding brought by the Insured against the Company must be filed only in a state or federal court within the United States of America or its territories having appropriate jurisdiction.

## 18. NOTICES, WHERE SENT

Any notice of claim and any other notice or statement in writing required to be given to the Company under this policy must be given to the First American Title Insurance Company, ATTN: Legal Department, 27775 Diehl Rd., Warrenville, IL 60555.

Policy Page 4

## Policy Issued By: First American Title Insurance Company

# SCHEDULE A

File No.: 554298
2014

Amount of Insurance:
$4,100,000.00

Date of Policy:
January 27, 2015 @ 01:33 PM

Policy Number:
554298

1. Name of Insured:
   3100 Woodward 2014 L.L.C., a Michigan limited liability company

2. The estate or interest in the land which is covered by this Policy is:
   Fee Simple

3. Title to the estate or interest in the land is vested in:
   3100 Woodward 2014 L.L.C., a Michigan limited liability company

4. The land referred to in this Policy, situated in the County of Wayne, City of Detroit, State of Michigan, is described as follows:

(SEE EXHIBIT A LEGAL DESCRIPTION)

The Property address and tax parcel number listed below are provided solely for informational purposes, without warranty as to accuracy or completeness: Crystal Lofts Condominium, 47 and 57 Watson Street Detroit, MI

 Issued By: First American Title Insurance Company
100 Bloomfield Hills Parkway, Suite 195, Bloomfield Hills, MI 48304
For additional information call (248)540-4102 or fax to (866)550-1079

*This policy is valid only if Schedule B is attached.*

## SCHEDULE B

File No.: 554298                                           Policy No.: 554298

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) that arise by reason of:

### PART ONE: General Exceptions

1. The lien of real estate taxes or assessments imposed on the Title by a governmental authority that are not shown as existing liens in the records of any taxing authority that levies taxes or assessments on real property or in the Public Records.

2. Any facts, rights, interests or claims that are not shown in the Public Records but that could be ascertained by an inspection of the Land or by making inquiry of persons in possession of the Land.

3. Easements, claims of easements or encumbrances that are not shown in the Public Records.

4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title including discrepancies, conflicts in boundary lines, shortage in area, or any other facts that would be disclosed by an accurate and complete land survey of the Land, and that are not shown in the Public Records.

5. Any lien, or right to a lien, for services, labor or material theretofore or hereafter furnished, imposed by law and not shown in the Public Records.

6. Taxes and assessments not due and payable at Date of Policy.

   **NOTE: Part One General exception(s) 1 through 6, inclusive is/are hereby deleted in its/their entirety.**

### PART TWO: Specific Exceptions

1. Covenants, conditions, restrictions and other provisions but omitting restrictions, if any, based on race, color, religion, sex, handicap, familial status or national origin as contained in Instrument recorded in Liber 1003, page 505, Register #309215, as to Parcel 2.

2. Terms and Conditions contained in Ordinance establishing the Brush Park Historic District as disclosed by Instrument recorded in Liber 20782, page 634, Register #G481677, Affidavit of Historic Designation Restrictions as disclosed by Instrument recorded in Liber 21244, page 694, Register #G615455, Modified Development Plan (Second Modification) Brush Park Rehabilitation Project as disclosed by Instrument recorded in Liber 29551, page 1900 and in Modified Development Plan (Third Modification) Brush Park Rehabilitation Project as disclosed by Instrument recorded in Liber 40535, page 209, as to Parcels 1 and 2.

3. Terms and Conditions contained in Decision and Order as disclosed by Instrument recorded in Liber 45323, page 449 and in Liber 47150, page 136, as to Parcels 1 and 2.

4. Easements, restrictions and other terms, covenants and conditions set forth in the Master Deed and Exhibits thereto recorded in Liber 45700, page 292, First Amendment to Master Deed recorded in Liber 46206, page 1307 and Second Amendment to Master Deed recorded in Liber 46955, page 1156, Wayne County Records. The rights of Co-Owners and the Administering Body as set forth in the Master Deed and Act 59 of the Public Acts of 1978 as amended, as to Parcel 1.

5. Terms and Conditions contained in Declaration of Easement as disclosed by Instrument recorded in Liber 45720, page 296, as to Parcels 1 and 2.

6. Terms and Conditions contained in Declaration of Easement as disclosed by Instrument recorded in Liber 46122, page 1049, as to Parcels 1 and 2.

7. AT&T Easement in favor of Michigan Bell Telephone Company, d/b/a AT&T Michigan and the Covenants, Conditions and Restrictions contained in Instrument recorded in Liber 46881, page

149 and in First Amendment to The AT&T Easement recorded in Liber 47402, page 82, as to Parcel 2.

8. Detroit Edison Underground Easement (Right of Way) in favor of The Detroit Edison Company and the Covenants, Conditions and Restrictions contained in instrument recorded in Liber 46958, page 1344, as to Parcels 1 and 2.

9. Grant of Easement in favor of Comcast of Detroit and the Covenants, Conditions and Restrictions contained in instrument recorded in Liber 47442, page 1192, as to Parcels 1 and 2.

10. Any lien relating to the inspection, demolition or removal of any improvement that has been or is presently located on the property.

11. Rights of tenants under any unrecorded leases.

12. Loss or damage arising out of any discrepancy between the legal description of the property as insured and the legal description of the property as assessed on the Wayne County tax rolls.

13. Terms and Conditions contained in Resolution as disclosed by instrument recorded in Liber 51482, page 747, as to Parcel 2.

14. Lien(s) for any additional taxes which may become due as a result of a reassessment and retroactive adjustment of taxes, as to Parcel 2.

15. The following matters as disclosed by survey dated September 16, 2014, last revised September 17, 2014, prepared by Nowak & Fraus Engineers, being Job No. I237:
a. Overhead wires and storm sewer crossing property and property lines.
b. Utility pole on property.
c. Fence inside Northerly, Southerly and Westerly property lines.
d. Concrete crossing Southerly property line.
e. Building and building awnings encroach into Woodward Avenue and Watson Street right-of-ways.

16. 2014 Winter Taxes – DUE.

17. Liens for taxes and assessments due and payable subsequent to the date of the vesting deed.

## EXHIBIT A
## LEGAL DESCRIPTION

File No.: 554298                                                    Policy No.: 554298

The land referred to in this Policy, situated in the County of Wayne, City of Detroit, State of Michigan, is described as follows:

PARCEL 1:
Units 4 through 8, inclusive and Units 10 through 23, inclusive, of CRYSTAL LOFTS CONDOMINIUM, a Condominium according to the Master Deed thereof as recorded in Liber 45700, page 292, Wayne County Records, and designated as Wayne County Condominium Subdivision Plan No. 934 and any amendments thereto, First Amendment to Master Deed recorded in Liber 46206, page 1307 and Second Amendment to Master Deed recorded in Liber 46955, page 1156, together with an undivided interest in the common elements of said condominium as set forth in said Master Deed, and any amendments thereto, as described in Act 59 of the Public Acts of Michigan of 1978, as amended.

EASEMENT PARCEL:
Non-exclusive easement(s) as created, limited and defined in Declaration of Easement recorded in Liber 45720, page 296 and in Liber 46122, page 1049, Wayne County Records.

PARCEL 2:
Part of Lots 5 and 6, of PLAT OF BRUSH SUBDIVISION OF PART OF PART LOTS 14, 15, 16 AND 17, CITY OF DETROIT, MADE BY EDMUND ADELAID AND ALFRED BRUSH, according to the plat thereof as recorded in Liber 45 of Deeds, page 121, Wayne County Records and all of Lot 1, of SUBDIVISION OF PART OF PARK LOTS 16 AND 17 AND THE EAST HALF OF LOT 5 OF BRUSH'S SUBDIVISION OF PART OF PARK LOTS 14, 15, 16 AND 17, according to the plat thereof as recorded in Liber 8 of Plats, page 33, Wayne County Records, including the North-South 20 foot wide public alley, now vacated within said Lot 1 as shown on City of Detroit Records, all more particularly described as: Beginning at the Southeast corner of said Lot 1; thence along the Northerly right-of-way of said Watson Street (48.00 feet wide), South 60 degrees 17 minutes 00 seconds West, 156.24 feet to the Southeasterly corner of CRYSTAL LOFTS CONDOMINIUM, a condominium according to the Master Deed thereof as recorded in Liber 45700, page 292, Wayne County Records, and designated as Wayne County Condominium Subdivision Plan No. 934; thence continuing along said condominium the following two (2) courses: (1) North 26 degrees 16 minutes 30 seconds West, 95.17 feet and (2) South 60 degrees 17 minutes 00 seconds West, 153.39 feet to a point on the Easterly right-of-way of Woodward Avenue (120.00 feet wide as widened); thence along the Easterly right-of-way of said Woodward Avenue, North 26 degrees 17 minutes 30 seconds West, 32.83 feet to a point on the Northerly line of said Lot 6; thence along said Northerly line of Lot 6, North 60 degrees 17 minutes 00 seconds East, 249.48 feet to the Northeasterly corner of said Lot 6, also being on the Westerly line of said Lot 1 and the Westerly line of said SUBDIVISION OF PART OF PARK LOTS 16 AND 17 AND THE EAST HALF OF LOT 5 OF BRUSH'S SUBDIVISION OF PART OF PARK LOTS 14, 15, 16 AND 17; thence along the Westerly line of said Lot 1 and the Westerly line of said SUBDIVISION OF PART OF PARK LOTS 16 AND 17 AND THE EAST HALF OF LOT 5 OF BRUSH'S SUBDIVISION OF PART OF PARK LOTS 14, 15, 16 AND 17, North 26 degrees 21 minutes 00 seconds West, 2.00 feet to the Northwesterly corner of said Lot 1, also being the Southerly line of a public alley (18.00 feet wide) as platted in said SUBDIVISION OF PART OF PARK LOTS 16 AND 17 AND THE EAST HALF OF LOT 5 OF BRUSH'S SUBDIVISION OF PART OF PARK LOTS 14, 15, 16 AND 17; thence along the North line of said Lot 1 and the South line of said 18.00 foot public alley, North 60 degrees 17 minutes 00 seconds East, 51.25 feet to the Northeasterly corner of said Lot 1; thence along the Easterly line of said Lot 1, South 30 degrees 12 minutes 33 seconds East, 129.78 feet to the Point of Beginning.

 **First American Title**

**Privacy Information**

**We Are Committed to Safeguarding Customer Information**
In order to better serve your needs now and in the future, we may ask you to provide us with certain information. We understand that you may be concerned about what we will do with such information - particularly any personal or financial information. We agree that you have a right to know how we will utilize the personal information you provide to us. Therefore, together with our subsidiaries we have adopted this Privacy Policy to govern the use and handling of your personal information.

**Applicability**
This Privacy Policy governs our use of the information that you provide to us. It does not govern the manner in which we may use information we have obtained from any other source, such as information obtained from a public record or from another person or entity. First American has also adopted broader guidelines that govern our use of personal information regardless of its source. First American calls these guidelines its Fair Information Values.

**Types of Information**
Depending upon which of our services you are utilizing, the types of nonpublic personal information that we may collect include:
* Information we receive from you on applications, forms and in other communications to us, whether in writing, in person, by telephone or any other means;
* Information about your transactions with us, our affiliated companies, or others; and
* Information we receive from a consumer reporting agency.

**Use of Information**
We request information from you for our own legitimate business purposes and not for the benefit of any unaffiliated party. Therefore, we will not release your information to unaffiliated parties except: (1) as necessary for us to provide the product or service you have requested of us; or (2) as permitted by law. We may, however, store such information indefinitely, including the period after which any customer relationship has ceased. Such information may be used for any internal purpose, such as quality control efforts or customer analysis. We may also provide all of the types of nonpublic personal information listed above to one or more of our affiliated companies. Such affiliated companies include financial service providers, such as title insurers, property and casualty insurers, and trust and investment advisory companies, or companies involved in real estate services, such as appraisal companies, home warranty companies and escrow companies. Furthermore, we may also provide all the information we collect, as described above, to companies that perform marketing services on our behalf, on behalf of our affiliated companies or to other financial institutions with whom we or our affiliated companies have joint marketing agreements.

**Former Customers**
Even if you are no longer our customer, our Privacy Policy will continue to apply to you.

**Confidentiality and Security**
We will use our best efforts to ensure that no unauthorized parties have access to any of your information. We restrict access to nonpublic personal information about you to those individuals and entities who need to know that information to provide products or services to you. We will use our best efforts to train and oversee our employees and agents to ensure that your information will be handled responsibly and in accordance with this Privacy Policy and First American's Fair Information Values. We currently maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard your nonpublic personal information.

**Information Obtained Through Our Web Site**
First American Financial Corporation is sensitive to privacy issues on the Internet. We believe it is important you know how we treat the information about you we receive on the Internet.
In general, you can visit First American or its affiliates' Web sites on the World Wide Web without telling us who you are or revealing any information about yourself. Our Web servers collect the domain names, not the email addresses, of visitors. This information is aggregated to measure the number of visits, average time spent on the site, pages viewed and similar information. First American uses this information to measure the use of our site and to develop ideas to improve the content of our site.
There are times, however, when we may need information from you, such as your name and email address. When information is needed, we will use our best efforts to let you know at the time of collection how we will use the personal information. Usually, the personal information we collect is used only by us to respond to your inquiry, process an order or allow you to access specific account/profile information. If you choose to share your personal information with us, we will only use it in accordance with the policies outlined above.

**Business Relationships**
First American Financial Corporation's site and its affiliates' sites may contain links to other Web sites. While we try to link only to sites that share our high standards and respect for privacy, we are not responsible for the content or the privacy practices employed by other sites.

**Cookies**
Some of First American's Web sites may make use of "cookie" technology to measure site activity and to customize information to your personal tastes. A cookie is an element of data that a Web site can send to your browser, which may then store the cookie on your hard drive.
firstam.com uses stored cookies. The goal of this technology is to better serve you when visiting our site, save you time when you are here and to provide you with a more meaningful and productive Web site experience.

**Fair Information Values**
Fairness We consider consumer expectations about their privacy in all our businesses. We only offer products and services that assure a favorable balance between consumer benefits and consumer privacy.
Public Record We believe that an open public record creates significant value for society, enhances consumer choice and creates consumer opportunity. We actively support an open public record and emphasize its importance and contribution to our economy.
Use We believe we should behave responsibly when we use information about a consumer in our business. We will obey the laws governing the collection, use and dissemination of data.
Accuracy We will take reasonable steps to help assure the accuracy of the data we collect, use and disseminate. Where possible, we will take reasonable steps to correct inaccurate information. When, as with the public record, we cannot correct inaccurate information, we will take all reasonable steps to assist consumers in identifying the source of the erroneous data so that the consumer can secure the required corrections.
Education We endeavor to educate the users of our products and services, our employees and others in our industry about the importance of consumer privacy. We will instruct our employees on our fair information values and on the responsible collection and use of data. We will encourage others in our industry to collect and use information in a responsible manner.
Security We will maintain appropriate facilities and systems to protect against unauthorized access to and corruption of the data we maintain.

Form 50-PRIVACY (9/1/10)                     Page 1 of 1                     Privacy Information (2001-2010 First American Financial Corporation)







US POSTAGE $008.25

ZIP 48313
041M11289372

9414 7266 9904 2148 3782 20

# O'REILLY RANCILIO P.C.
## ATTORNEYS AT LAW

Sterling Town Center
12900 Hall Road, Suite 350
Sterling Heights, MI 48313

CERTIFED MAIL RETURN
RECEIPT REQUESTED
FIRST AMERICAN TITLE
INSURANCE COMPANY
C/O CSC LAWYERS INCORPORATING
SERVICE
601 ABBOTT ROAD
EAST LANSING MI 48823

